G. W. ALLEN V. THE CHICAGO, MILWAUKEE & ST. PAUL. RAILWAY COMPANY, Appellant.

**Evidence:** JURY QUESTION.   Plaintiff testified that a frog in which his foot caught was not well blocked. Others say that, several days after the injury, the point in the angle was broken off. Witnesses who saw the broken pieces testified that the breaking had occurred some time back. The weather-stained and worn pieces were shown to the jury. Eight or ten disinterested witnesses testified that at the time of plaintiff's injury the frog was so blocked that a foot could not be caught in its angle.   *Held,* to be a conflict for the jury.

*Appeal from Dallas District Court.*—HON. A. W. WIL-
KINSON, Judge.

FRIDAY, OCTOBER 11, 1895.

Action to recover for personal injuries.   Trial by
jury.   Verdict and judgment for the plaintiff.   Defend-
ant appeals.—*Affirmed.*

*Edmund Nichols* and *Wright & Baldwin* for appel-
lant.

*Shortley & Harpel* for appellee.

Rothrock, J.—The plaintiff was employed on the
railroad of the defendant as a brakeman on a freight
train.   On the third day of September, 1893, while
engaged in the performance of his duties, walking
between moving cars, and uncoupling the same at a
station named Jamaica, the wheels of one of the cars
ran over his foot, and injured the same to such an
extent that amputation became necessary.   The alleged
negligence of the defendant upon which the right to
recover damages is predicated, as set forth in the peti-
tion, was that, in making the coupling, it became neces-
sary to cross over a frog connecting two tracks, and
said frog was insufficiently blocked, with material
which was unsuitable for the purpose; and that it was
out of repair, badly worn, cracked, and broken, so that
the plaintiff stumbled against the end of the blocking,
and his foot was caught and fastened in the angle of the
frog; and that, by reason of being unable to extricate
his foot, the same was run over and injured.   There are
the usual averments of proper care on the part of plaint-
iff, and the cause was tried wholly upon the averment
of negligence of the defendant in failing to properly
block the frog. .

VOL. 95 Ia—38

There is really no question of law in the case, and there is but one question of fact necessary to be determined, and that is the condition of the frog at the time of the accident. It is contended with great earnestness in behalf of appellant that there was absolutely no evidence in the whole case showing that there was any defect in the filling or blocking of the frog, and that the claim that the plaintiff's foot was caught and fastened in the frog is wholly without the support of any evidence. On the other hand, it is insisted by counsel for plaintiff that the evidence fully supports the verdict. There is a dispute in the abstracts as to what the evidence was on this question; and, as the case appeared to us to depend upon the single inquiry as to the condition of the frog, we practically discarded the abstracts, and carefully read and studied the official report of the testimony, as taken by the shorthand reporter. It appears therefrom that the plaintiff testified positively that his foot went down in the angle of the frog, and that he was unable to extricate it, and that he threw his body outside the rail, and the wheels passed over his foot. We will set out a few questions and answers as found in the transcript of plaintiff's testimony. They are as follows: "Question. State when you went in to pull the pin. Answer. After the train had started back. Question. How was it going back? Answer. Very slowly. Question. And what happened to you while you were attempting or while you were pulling this pin, or at the time you pulled it, or after you pulled it? Answer. My left foot stumbled on the blocking in the frog, and my right foot caught in the blocking or in the frog, and the wheel passed over it, and bruised it so that it had to be taken off. Question. State whether you could get—was able to get—your foot out of the frog at that time before the wheel was on it. Answer. I couldn't. Question. What part of your foot was fastened in the frog? Answer. My toe, I

think. Question. Could you state whether there was any filling between in the frog where your foot went in or not? Answer. Not that I could feel. It seemed to go right down with me, and I got caught." This testimony was substantially repeated several times during the examination of the plaintiff as a witness.

Now, it is to be conceded that no other witness stated that there was such a defect in the blocking at the time of the injury as would allow the foot of any one passing over it to be caught and held fast. No other witness was examined who claimed to have discovered such a defect before the accident. On the contrary, the defendant called and examined some eight or ten witnesses who testified that there was no defect whatever at the time or for some days after the injury was received. Most of the witnesses went to the place for the purpose of ascertaining that fact, and experimented with their feet, and testified that they found it impossible to fasten the foot in the frog. There is no question that the point of the block in the angle was out of repair some eight or ten days after the injury. It was broken down at the point, so that one passing over it might fasten the foot in it. Now, it cannot be said that, although the testimony of the witnesses are as eight or ten to one, on this vital question in the case, that there is no conflict in the evidence. But as we read this evidence by question and answer, if this were all, we would ponder long before we would be able to bring our minds to sanction such a verdict. Several of the witnesses who testified that there was no break in the blocking, were wholly disinterested, being neither employes nor in any way connected with the service of the defendant. But a number of witnesses testified in behalf of the plaintiff that the break which was found in the blocking had the appearance of having been done quite a while before the time of the injury, and pieces of the broken wood were kept and exhibited to the jury

to corroborate that theory. We are unable to determine what force that evidence should have in determining the question as to whether the break was made before or after the accident. It is contended that the weather-worn appearance of the block when it was broken, and of the pieces broken from it, being worn, discolored, and decayed, corroborated the judgment of the plaintiff's witnesses that the block had been broken from a time prior to the day plaintiff received his injuries. The appearance of these pieces of the block, taken in connection with the testimony of the witnesses as to their condition soon after the accident, we think, must have induced the district court to overrule a motion for a new trial. Other questions are discussed by counsel, which we do not think demand special consideration. The judgment of the district court is *affirmed.*